The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Craig H.D. Armon presiding. Good afternoon, gentlemen. Good afternoon, your honor. Good afternoon. This is 4-20-0166, a state of... is it Hasbrook? Yes. Am I pronouncing that properly? You are. Hasbrook v. Burlington Healthcare Providers, Inc. Counsel for Appellant, could you please state your name for the record? My name is Craig Unrath. I represent Burlington Healthcare Providers. Thank you. Counsel for Appellate, could you please state your name for the record? Patrick D.C. I represent the Hasbrook family. Mr. Unrath, you can proceed. Good afternoon, your honors. May it please the court. This is my second Zoom oral argument and I'll just say that I don't know if I'll ever become accustomed to this, but it is necessary under the circumstances. This court is called upon to decide whether the circuit court can properly assert special jurisdiction over a Wisconsin corporation in the business of recruiting physicians for permanent or locum tenens placement in hospitals across the nation. Now, to remain consistent with due process, a court may only exercise specific jurisdiction where it finds a substantial connection with the forum state. And to establish this substantial connection, plaintiff must show two things. First, that the defendant purposely directed its activities at the forum state. And second, the cause of action arose out of or relates to the defendant's contact with the forum state. As one court explained, this is the Zamora decision, specific jurisdiction is confined to adjudication of issues deriving from or connected with the very controversy that establishes jurisdiction. Now, the critical question in this case is the manner in which our courts determine whether a cause of action arises out of or relates to the defendant's contact with the forum state. In Russell v. SNFA, the Illinois Supreme Court addressed this issue head-on, holding that if a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts. So, what are the operative facts in this case? This is a claim for medical negligence directed at the conduct of Dr. Chowdhury. Plaintiff claims that in providing medical care, Dr. Chowdhury failed to protect the airway of the plaintiff's decedent. In other words, the operative facts in this complaint are devoted entirely and limited to the actual practice of medicine. Now, it's undisputed that Burlington had no knowledge of Dr. Chowdhury's provision of medical care, nor did it have any supervisory control over his medical decisions. Burlington plays no role whatsoever in the actual medical treatment provided by the physicians it offers for placement. Accordingly, there is no relation between Burlington's contacts with the state and the operative facts of the controversy. Mr. Unrath, is it too broad to say, well, they are the reason this doctor was at this hospital practicing medicine, and they're the reason this doctor had the opportunity to work on the decedent? Is that enough? I don't think, I don't believe it is, Your Honor, and I think that if we were to courts were to adopt that position, it would be difficult to find any boundaries to it. Certainly, the provision of medical care could not have taken place unless the equipment provider had provided the necessary diagnostic equipment. The, for that matter, you could even take it in terms of the utilities. Certainly, the provision of electricity, where do you draw the line? The fact that we merely did a preliminary licensure check on this doctor cannot be extended to his actual provision of medical care, and this is shown right in Burlington's contract. You know, at the very beginning of the contract, it states that Burlington will make a, this is a quote, a preliminary reference and license check. They're ensuring that this Dr. Chaudhry had a license to practice medicine, but then the contract goes on. It says, but evaluation, final approval, and credentialing, that's left to the hospital. This, and then we have the independent contractor's statement that Dr. Chaudhry signed, stating that he is an independent contractor and that he is responsible for paying all taxes that may accrue to his wage. Now, plaintiff at one point argues that Burlington profited financially from Dr. Chaudhry's negligent care. We submit that this misrepresents the case. The fact is Burlington would be paid a portion of Dr. Chaudhry's hourly wage, regardless of whether he even sees a patient. It comes down to this, Burlington is not in the practice, in the business of practicing medicine. Now, this point is driven home, I believe, by a case that plaintiff relied on in his brief, the Costo decision. Now, in that case, tissue samples were sent to an out-of-state corporation. The samples were analyzed, diagnostic reports were made, and those diagnostic reports were sent to the physician who relied upon those reports in his treatment of the patient. Now, in other words, the Costo decision describes a medical malpractice case where the out-of-state defendant was directly involved in the provision of medical care. The Costo division as such, the Costo decision is the exact opposite of what we have in the where the out-of-state defendant had absolutely no involvement whatsoever in the actual practice of medicine. Now, one last point here is that, as noted in our briefs, foreseeability is the central focus in applying the arising out-of test. Burlington went to great lengths, made it very clear that the physicians it refers are that the final decision as to whether he should be hired and what he should do, what his duties will be in the hospital, what patients he sees, how he treats them, that is all decided by the hospital, not Burlington. But your contract provides, does it not, that if there is a claim against one of your doctors that you're to get a copy of that complaint or that claim so that you can provide it to your malpractice carrier? That's actually wound into the same paragraph regarding medical malpractice insurance. And under the contract, Burlington states that if the Dr. Chowdhury or Blessing Hospital, if they are unable to provide medical malpractice coverage, Burlington can arrange for that coverage. And then in the following sentence it says, and any claim of negligent treatment should be reported to them. And I believe that that should be read in conjunction with the option of obtaining medical malpractice insurance through Burlington. Burlington can provide that. So they're not seeking your provision of malpractice insurance, you're saying that the contract does not obligate them to provide you with a copy of any claim against the doctor that you have referred? I think that's a little bit unclear, your honor. And in our brief we pointed out that if there has been a claim, we'd like to know about it. And I think that that only makes sense. If you're in the business for referring physician placement, we've already said in the opening paragraph of the contract that we perform a preliminary check of references and credentials. I think that this would fall right into place with that. So under the circumstances of this case, where we have established, to my mind without question, the fact that we have an independent contractor, it was simply unforeseeable that we would be tailed into court to defend a claim for medical malpractice when we had absolutely no supervisory control and absolutely no involvement with the actual medical care. And that's all I have. Are there any further questions from the court? I see none. Thank you, Mr. Unrath. Thank you. Mr. Giese. Thank you very much, your honors. Did I pronounce your name correctly? I'm sorry. You did, your honor. Thank you. Your honors, may it please the court, good afternoon. Good afternoon. Your honors, the trial court in this case correctly determined that this record contains a classic presentation of facts that warrant personal jurisdiction and that it is fair to require a Wisconsin company to defend a claim here when that defendant profits from the provision of Illinois doctors to treat Illinois patients in Illinois hospitals. And Justice Holder White, if I may briefly address a question that you asked counsel during his argument that isn't it true that Burlington is the reason that the doctor was present to treat the patient? The answer to that question is absolutely yes. It is Burlington's entire business model to place doctors into Illinois hospitals to treat Illinois patients and then accept a portion of the hourly wage that doctor earns treating Illinois patients. And counsel's examples that these arguments about perhaps an equipment company that is present in the hospital might also be found liable. I respectfully would suggest that you'd be unlikely under the circumstances that counsel presented to see an agency claim like we have here. And I think the agency issue is one that I'd like to address in a few moments. Before we move on, Mr. Giese, can I ask a quick question? I'm glad that you referenced Justice Holder White's question. And my question is, what level of control was retained of the doctor after the referral of the doctor to Blessing? Best case scenario for you. Thank you, Justice Kavanaugh. That's an excellent question because even without the benefit of agency discovery in this case, on the limited jurisdictional discovery that we've conducted, there is evidence of control. We have a contract that obligates Burlington to pay the doctor directly. We have a doctor who has to submit his availability to Burlington so that Burlington can relay it to the hospital. We have evidence of representatives of Burlington negotiating rates with the hospital for the work that Dr. Chowdhury would ultimately be performing at this hospital. And we have evidence that there's an authority at Burlington that is assisting in the past facilitating information for the credentialing of Dr. Chowdhury at Blessing Hospital. And why is this important? Because every step along the way, we have Burlington ensuring that it will generate fees out of this doctor's treatment. And the quicker they can get this doctor credentialed in the Blessing Hospital, the quicker he can start treating patients, the quicker Burlington can take a portion of the fees that are generated as a result of that treatment. Okay, so you've answered my question and with regard to what control was retained. Now, link that, if you can, to the operative facts to the Council of Abroad. I think I can, Your Honor. Thank you for that question. I think it can be put very simply, very starkly. With the understanding that Council admitted at the hearing on the motion to dismiss at the trial court stage that this Wisconsin company had contacts with Illinois, there's no doubt about it. The connection arising out of this occurrence, Burlington placed an Illinois doctor, Dr. Chowdhury, in an Illinois hospital for the purpose of generating fees for the treatment of Illinois patients, including the treatment of Ginger Hasbrook. That's the 10,000 foot version. And if we break it down even more starkly than that, Your Honor, Dr. Chowdhury treated Ginger Hasbrook in an Illinois hospital. Dr. Chowdhury confirmed his hours related to that treatment of Ginger Hasbrook, sent those hours to Burlington. Burlington sent those hours to the time that Dr. Chowdhury spent treating Ginger Hasbrook, and that treatment is what is alleged to be negligent here as a result of care provided by Burlington's alleged agent. And that's how we tie these contacts back to the operative facts of Plaintiff's complaint. And I think, if I might, Your Honors, address the argument that this doctor was an independent contractor. I think Illinois case law is very clear that the determination of agency is not made based on the party's private designations of their relationship. And in fact, if I might read from 50.10 of the Illinois pattern jury instructions, where a jury in an agency case, which is classically a question of fact, the issue of agency, would be instructed here under these circumstances that the term agent is broader than either servant or employee. A servant or employee is an agent, but one may be an agent although he is neither servant or employee. And we have seen in countless cases in the state of Illinois, folks who have been privately designated independent contractors found to be agents. We can look at the Gilbert decision in the taxicab context, the Jacobs decision. Recently in the Fifth District, there was an agency decision, an apparent agency decision, with respect to an independent contractor doctor. Certainly it's not dispositive on the issue of personal jurisdiction, where we're supposed to be evaluating contacts and whether those contacts arise out of the operative facts of this occurrence. And certainly, I suppose we get to the defendant's true beef with plaintiff's complaint here, which is that it would appear from the papers that it's their impression that plaintiff can't prove an agency case under these circumstances. I would submit respectfully that that's not true, given the evidence of agency that I've just highlighted a moment ago for the court.  Addressing the foreseeability, which is really no different than saying whether or not it's fair and reasonable to ask this Wisconsin company to be hailed into court here. And I think if we frame the inquiry correctly, the question is, is it fair to require a Wisconsin defendant that profited from alleged negligent treatment provided by its alleged agent of an Illinois patient in an Illinois hospital, where the evidence also shows that the Wisconsin company has relationships with many other Illinois health care providers and a business relationship with Blessing Hospital that dates back to 2009? Is it fair to ask that defendant to answer for alleged torture? The answer is yes. I don't think there's any question about it. There is little to no burden on a defendant to have to answer, defend a claim in a state where it conducts substantial business, as this record has demonstrated. Mr. Easy? Yes, Your Honor. Is the notion that Burlington made money, does that come into play in our analysis? I think it does, Your Honor. I think it does because we have very strong evidence in this record that Burlington has availed itself purposely of the privileges of doing business in this state. And if we look at the Supreme Court's language in the Russell decision, which was a decision where a French company was hailed into court in Illinois, that court wrote that by engaging a business entity in Illinois, it's clear that the French manufacturer defendant benefited from and here we've had evidence that's demonstrated in this case that this Wisconsin defendant is attempting to benefit from the Illinois market for health care services, which necessarily means they make money performing these services. Well, let me rephrase my question. Does the fact that they made money, does that go to whether or not this is part of the operative facts, that analysis? Because I wonder if you can't demonstrate that it's part of the operative facts, do we even get to what you're arguing? I think we can, and if I'm understanding, Justice Holder-White, your question correctly, when we're conducting the analysis to determine whether these contexts are related to the operative facts, we have a lot of language in Illinois case law that suggests that this is a flexible and lenient standard. We have an opportunity here to evaluate whether it's fair and reasonable, whether these contacts arise out of the treatment of this patient. Based on this record, as the court pointed out at the beginning of this this doctor wouldn't have been there treating this patient, but for Burlington's placement of this doctor in this hospital. This is a business that is predicated entirely upon obtaining payment for treatment services provided by the doctors that's placed in Illinois medical facilities, and because of that placement, this patient was subject to treatment. We tie these back to satisfy the arises from that these contacts arise from the occurrence. Mr. Deesey, I want to address a point. You're familiar with the United States Supreme Court case of Rush in the context of this matter, and essentially, I'm going to paraphrase, but the issue there was an insurance policy, and we seem to be, or you seem to be arguing the terms of contract between defendant and hospital, and we're not talking as much about the underlying facts of the counts. So in sort of that context of that holding, can you speak to that? Because we do seem to be talking about the agreement more than we are the underlying facts that make up the counts in this matter. So I certainly believe that the agreement has relevance, as the trial court also pointed out, but looking well beyond the agreement when we're evaluating the contacts that have given rise to the negligent treatment that Ms. Hasbrook ultimately suffered, there's no question that the medical treatment that was provided is related to this Wisconsin Corporation's relationship with Blessing Hospital in addition to the contract, the course of dealing, and as we've seen the relationship actually work out in the facts of this case based on the discovery that's been conducted here. And unless there are other questions from the the justices, I'm happy to conclude there. All right, I see none. Thank you, Counsel. Mr. Unrat. Pardon me. Very briefly, Your Honor, it strikes me that one of the critical factors in this case is that Burlington placed a physician in a hospital. I can imagine a situation where Burlington employed a team of doctors, and the moment they find they find one of their client hospitals is missing a few doctors, perhaps they've fallen ill, we're going to send in one of our doctors, just let us know he'll be there tomorrow, and he or she is going to take care of your patients. Well, now there we have a whole different situation. In a case like that, I have no doubt that special jurisdiction would apply, but Burlington did not place this physician in the hospital. The hospital made that decision. Burlington said, we know Dr. Chowdhury, he's in our listing, in our directory, and these are the hours he can work. Now, we've done a preliminary check, he's licensed to practice medicine, we checked references, and done a preliminary review of his license. Now it's up to you to decide, you, the hospital, you have to decide whether you want this doctor or not. The decision isn't ours, it is entirely in the hands of a blessing hospital to not only evaluate, but to make the ultimate hiring decision. And if blessing hospital doesn't think that this physician will fit in, they're free to say, find us somebody else, or go to a different company and look at their directory of when you ask, what's our role? This negligence could not have occurred unless we placed that physician there. I think that that's a mischaracterization of the case. We didn't place the physician there. Blessing hospital placed that physician. Blessing hospital is the one that's responsible for evaluating and credentialing Dr. Chowdhury and putting him in a position where he could actually treat patients. What we did was we provided his hours. We provided the means by which they could get a quick placement for them, but it was entirely up to the hospital to make that decision. We didn't place the the physician, blessing hospital did. Now again, there's another, and perhaps this is the finest thing. Mr. Unrath, I'm sorry, could I interrupt you and ask a question? Sure. So we know that they're saying that this is a claim, an agency claim basically, and there's some discussion in the brief about the fact that the doctor was an independent contractor under the agreement or the contract. Should we consider that in making a determination in this matter? Should we be looking to whether or not they even state a cause of action under agency given the contract says that the doctor was an independent contractor? I don't think it's necessary for this court to determine and make a ruling as to whether or not an agency relationship existed. Quite often agency decisions are for a trier of fact. Now it's true where the facts are disputed, a court may rule as a matter of law that an agency relationship either existed or did not. But in this particular case, we offer this argument not asking this court for specific ruling on that issue. We're merely pointing this out as a matter of foreseeability. And you might say as far as we are concerned, as far as our view of the case, we had an independent contractor, therefore it was not foreseeable that we would be hailed into court. The critical factor here, and I have to concede Mr. Gizzi's point, the fact that we have a contract who labels him an independent contractor is not dispositive. The controlling issue here is control. It's supervisory control. Could we tell Dr. Gizzi what he should do, how he should do it, how much time he should spend if he decides he wants extra tests? Will some of that, those costs come back to us? No, it would not. We had nothing to do with that. We did not place that doctor in the hospital, and nor did we supervise his work in any manner. Certainly we had no contact with the plaintiff's proceedings. So is this court required to make a determination of agency? I'd say no. I don't think that that's necessary. However, I think it is important that the court recognize that if this appears in a situation where there is absolutely no supervisory control, it was unforeseeable that we would be hailed into court over a medical malpractice claim when we are not in the business of practicing medicine. The final point I'd like to make is another point that keeps coming up. It says that we were paid for Dr. Chaudhry's treatment of medicine, and that's not true. We were paid a portion of his hourly wage, whether he saw a patient or not. They could put him in a filing room. They could have him doing medical research. They could be whatever they wanted to do. Blessing Hospital made that decision as to what he would do and how he would do it. Thank you, Mr. Unrath. Your time is up. The court will take this matter under advisement. The court stands in recess. Thank you, gentlemen.